
FILED
IN CLERK'S OFFICE
U.S. DI...          ...N.Y
★ SEP 21 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ELFGEEH,

                      Petitioner,

      - against -

UNITED STATES OF AMERICA,

                    Respondent.
----------------------------------------------------------------X

09 CV 2015 (SJ)

MEMORANDUM
AND ORDER

A P P E A R A N C E S :

JAMES M. BRANDEN
Law Offices of James M. Branden
551 Fifth Avenue
New York, NY 10176
212-286-0173
Fax: 212-286-0495
Email: jamesmbranden@aol.com
Attorney for Petitioner

PAMELA KI MAI CHEN
United States Attorney's Office
Criminal Division
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
(718)254-7575
Fax: (718)254-6669
Email: pamela.chen@usdoj.gov
Attorney for Respondent

P-049

JOHNSON, Senior District Judge:

Petitioner Abad Elfgeeh ("Petitioner"), has petitioned this Court pursuant to 28 U.S.C. § 2255, to vacate or set aside his sentence and to grant him a new trial. For the reasons stated below, Petitioner's application is DENIED.

## BACKGROUND

On February 3, 2003, Petitioner was indicted on two counts of conspiring to operate and operating an unlicensed money transmitting business in violation of 18 U.S.C. §1960. On the advice of CJA counsel Dawn Cardi, Esq. ("Cardi"), Petitioner pled guilty to the indictment without an agreement with the government, subjecting him to a maximum sentence of 120 months.

Prior to sentencing, Petitioner changed his representation. While Petitioner's attorney of record was listed as Frank J. Hancock ("Hancock"), Petitioner alleges he was led to believe Burton Pugach ("Pugach") was his counsel. Pugach is a disbarred felon who has worked as a paralegal for various attorneys; Hancock was disbarred in 2008 for inter alia aiding and abetting Pugach in the unauthorized practice of law.

On February 17, 2004, after changing counsel, Petitioner filed a motion to withdraw his guilty plea and dismiss the indictment. That motion was denied. However, Judge Sifton declined to accept the guilty plea because the allocution was factually insufficient on the conspiracy charge and legally deficient

2

because the Magistrate Judge failed to advise Petitioner that his sentences could run consecutively.

On September 2, 2004, the case was transferred to this Court. Two weeks later, the government filed an additional charge of structuring in violation of 31 U.S.C. §5313(a). After Petitioner was found guilty by a jury of all charges, he was sentenced to 188 months of imprisonment and three years supervised release.

On April 24, 2009, Petitioner filed the instant petition pursuant to 28 U.S.C. §2255 claiming he received ineffective assistance of counsel. Specifically, Petitioner argues that Pugach's representation constituted per se ineffective assistance of counsel given his disbarment. Alternatively, Petitioner argues that he received ineffective assistance of counsel because he received a higher sentence due to the woefully ill-advised motion to withdraw his guilty plea.

On April 21, 2010, a hearing on these issues was held before this Court.

P-049

## DISCUSSION

Petitioner contends first that he was cozened by Pugach and denied effective assistance of counsel due to Pugach's participation in his defense. Second, Petitioner claims that various aspects of Hancock's representation were insufficient.

In <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), the Supreme Court established a two-part test to determine whether counsel's assistance was ineffective. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness. . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688. When evaluating counsel's performance, courts give deference to the attorney since it is all too tempting for a defendant to examine an attorney's actions in the magnifying glass of hindsight. To fairly assess an attorney's performance, courts eliminate the effect of hindsight by considering counsel's conduct from counsel's perspective. Thus, to meet the first prong of the <u>Strickland</u> test, Petitioner must overcome a strong presumption that the challenged action should be considered sound trial strategy. <u>Id.</u> at 689.

Under <u>Strickland</u>, the first prong - constitutional deficiency - is necessarily linked to the practice and expectations of the legal community: "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Id.</u> at 688. The Supreme Court has long recognized

4

that "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable ... ." Ibid.; Bobby v. Van Hook, 558 U.S. ----, ----, 130 S.Ct. 13, 16, 175 L.Ed.2d 255 (2009) (per curiam); Florida v. Nixon, 543 U.S. 175, 191, and n. 6, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004); Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). However, they are "only guides," Strickland, 466 U.S. at 688, 104 S.Ct. 2052, and not "inexorable commands," Bobby, 558 U.S. at ----, 130 S.Ct. at * 17. The essence of "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.

Second, the defendant must show that counsel's performance prejudiced his defense. Id. at 692. To show prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Thus, the petitioner must demonstrate that counsel failed to raise significant and obvious issues that if raised, would likely have been successful. Mayo v. Henderson, 13 F.3d 528, 533-34 (2d Cir. 1994). Unless the petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process.

P-049

## I. Per-se Ineffective Assistance of Counsel

Petitioner claims that Pugach's participation in his case amounted to a per se denial of his right to conflict-free representation. (Pet. Mem. of Law at 28). Pugach has stated numerous times, in testimony and in his affidavit, that he was working as Hancock's paralegal with respect to Petitioner's case. (Apr. 21, 2010 Hr'g Tr. 2:19-20; 15:12-16; Pugach Aff. at 2-3). This argument is similar to the argument he advanced in In re Hancock, 55 A.D.3d 216 (2d Dep't 2008), the disciplinary proceeding in which Hancock was disbarred for allowing Pugach, a disbarred felon, to unlawfully practice law, including allowing Pugach to "use [Hancock's] name freely on court papers and to advertise himself as a paralegal." Id. at 806. Although Hancock signed the bankruptcy petitions in issue in that matter, the court found that it was at Pugach's behest. Id. at 805. Petitioner argues that a similar arrangement was in effect in his case: Pugach prepared the papers and ran the case with little supervision from Hancock. (Pet. Mem. of Law at 23-25). Petitioner urges this Court to find that Pugach and Hancock were committing a crime during the course of their representation of Petitioner that created a conflict that effectively denied Petitioner of any representation. See Solina v. United States, 709 F.2d 160, 164 (2d Cir. 1983) (finding a per se deficient counsel, reasoning that an unlicensed attorney is "engaging in a crime" and "cannot be wholly free from fear of what might happen if a vigorous defense should lead the

P-049

prosecutor or trial judge to inquire into his background and discover his lack of credentials").

When the accused has been deprived of representation by counsel, he is entitled to relief without proving that he was prejudiced by the deprivation, for "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)). Indeed, the assistance of counsel is so fundamental a requirement that it has been termed "an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." Johnson v. Zerbst, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938); see also Solina, 709 F.2d at 168-69.

In general, the Sixth Amendment guarantee is not satisfied if the accused is represented by a person who, for failure to meet substantive bar admission requirements, has never been admitted to the practice of law in any jurisdiction. See, e.g., Solina, 709 F.2d at 167; People v. Felder, 47 N.Y.2d 287, 293, 418 N.Y.S.2d 295, 297, 391 N.E.2d 1274, 1275-76 (1979) (interpreting the Sixth Amendment's provision for "counsel" as guaranteeing "nothing less than a licensed attorney at law"); see also Huckelbury v. State, 337 So.2d 400, 403 (Fla.Dist.Ct.App. 1976). In Solina, the defendant was represented by someone who

7

failed the New York State bar examination twice. The defendant was never admitted to the practice of law in New York or any other state. The Second Circuit interpreted the guarantee of "[a]ssistance of [c]ounsel" to mean, at the least, "representation by a licensed practitioner," Solina, 709 F.2d at 167, and concluded that a defendant's Sixth Amendment right has not been honored where his counsel was "not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character." Id.

While the Second Circuit has found that an attorney never qualified to practice law cannot satisfy a defendant's Sixth Amendment right, it has never found that representation by a disbarred felon forms the basis of a per se ineffective assistance of counsel claim. Compare United States v. Novak, 903 F.2d 883, 887-888 (2d Cir. 1990) (representation at trial by individual who had obtained admission to bar through fraudulent means was per se insufficient to satisfy Sixth Amendment), with Waterhouse v. Rodriguez, 848 F.2d 375 (2d Cir. 1988) (defendant's lawyer, disbarred during pretrial hearing for conduct unrelated to the defendant, was not per se ineffective).

In United States v. O'Neil, 118 F.3d 65 (2d Cir. 1997), cert. denied, 522 U.S. 1064, 118 S.Ct. 728, 139 L.Ed.2d 666 (1998), the Second Circuit described three categories of Sixth Amendment violations: per se, requiring no showing of prejudice; conflicts of interest that do not rise to the level of per se

violations, for which prejudice will be only presumed once the defendant "demonstrates an actual conflict and a lapse in representation"; and ineffective-assistance, requiring satisfying the Strickland two-prong test. Id. at 70-71. For the per se category, the court stated that it had found violations "in only two instances: (1) where the attorney was not licensed to practice law because he failed to satisfy the substantive requirements of admission to the bar, and (2) where the attorney was implicated in the defendant's crime." Id. at 71; see also, U.S. v. Headley, 2000 WL 1359620, 230 F.3d 1360 (Table), *5 (6th Cir. Sept. 11, 2000) (affirming that the fact that the attorney's license was suspended did not create a case of ineffective assistance of counsel per se).

It appears that most courts facing the issue have held that suspension or disbarment alone is not enough to make an attorney per se ineffective. See, e.g., U.S. v. Ross, 338 F.3d 1054, 1056 (9th Cir. 2003). ("[i]f counsel, who once passed the bar but was suspended before trial, still performed adequately, the process is not made fairer by awarding defendant a windfall even if he can't identify a single thing a licensed attorney would have done differently . . . To prove ineffective assistance, defendants in these cases (like everyone else) [must] identify 'actual errors and omissions by counsel that a conscientious advocate would not have made,' and show that they suffered prejudice from those errors."); U.S. v. Mitchell, 216 F.3d 1126 (D.C. Cir. 2000) ("holding that the fact of suspension does not, by itself, render counsel ineffective under the Sixth Amendment. Instead, the normal

<u>Strickland</u> rule applies and a defendant must meet his burden of showing deficient performance at trial which resulted in prejudice"); <u>see also</u>, <u>Reese v. Peters</u>, 926 F.2d 668, 670 (7th Cir. 1991); <u>Waterhouse v. Rodriguez</u>, 848 F.2d 375, 383 (2d Cir. 1988); <u>United States v. Mouzin</u>, 785 F.2d 682, 696-97 (9th Cir. 1986); <u>United States v. Myles</u>, 10 F.Supp.2d 31, 36 (D.D.C. 1998).

Both Pugach and Hancock were once qualified to practice law. Furthermore, Hancock was the only attorney who appeared during the trial stage. In a recent South District case, <u>Stevens v. U.S.</u>, Nos. 09 Civ. 4098(JFK), 03 Cr. 669(JFK), 2010 WL 3447900 (S.D.N.Y. Sept. 1, 2010), the petitioner was represented at trial by appointed counsel, then an attorney on the Criminal Justice Act panel, who was joined at the defense counsel table by someone falsely representing himself as an attorney. <u>Id.</u> During voir dire, the attorney represented to the Court's deputy clerk that the individual was his associate, and the Court referred to the individual as such at trial. <u>Id.</u> The individual attended sidebars intended for attorneys only and his name was listed beneath the attorneys on the trial transcript with the designation "Attorneys for Defendant." <u>Id.</u> Neither the attorney nor the individual corrected the Court's understanding. <u>Id.</u> After a jury found petitioner guilty of all charges, the court learned that the individual was not an attorney and was a twice convicted felon. <u>Id.</u> The attorney withdrew as petitioners' attorney and the Court appointed new counsel for sentencing. <u>Id.</u> The Court in <u>Stevens</u> declined to apply a per se standard to counsel's actions, finding

10

that "[the individual's] mere presence at trial did not affect the representation Petitioner received." Id. at *3. Likewise, Pugach's mere presence at trial, where Hancock made many of the decisions and questioned the witnesses, has not shown to have per se affected the representation Petitioner received. (See supra at 14.)

II.      Who Was Petitioner's Attorney

        Before we determine whether Petitioner received ineffective assistance of counsel under the Strickland standard, we must first determine who Petitioner's attorneys were at all phases of this criminal matter. Not surprisingly, Petitioner and Pugach have different accounts of how Pugach came to join Petitioner's legal team. Both agree on the same basic premise: Petitioner was referred to Pugach by another Yemeni who'd received Pugach's counsel for a similar matter. Petitioner initially called Pugach and they arranged to meet at Petitioner's home in Brooklyn because he was on house arrest at the time. (Apr. 15, 2010 Hr'g Tr. 100:21 – 101:102:4; Apr. 21, 2010 Hr'g Tr. 6:15-7:10). Pugach reviewed some paperwork for Petitioner during this meeting. This is where the agreement ends. Pugach testified that he informed Petitioner that he wasn't practicing law during this initial meeting, but that he would recommend another lawyer (Frank Hancock) to him. (Apr. 21, 2010 Hr'g Tr. 7:19-22). Petitioner's testimony differs significantly. Petitioner testified that Pugach never mentioned that he had been disbarred during their initial meeting and that Pugach said that he

11

would make a motion to withdraw the guilty plea in exchange for $10,000. (Apr. 15, 2010 Hr'g Tr. 105:14-106:20). Petitioner testified that he gave Pugach $1,000 in cash for this initial visit. (Apr. 15, 2010 Hr'g Tr. 106: 15-21). Although there is a question as to how much of the meeting he understood, Petitioner's nephew was present at this initial meeting and testified in support of Petitioner's version of events. (Apr. 15, 2010 Hr'g Tr. 33:14-34:22).

After this initial meeting, subsequent meetings took place in Hancock's office. Although all parties testified that the office had a picture of Pugach from a newspaper clipping, there was no testimony that Pugach's name was on the office door or that there were other indicators aside from this picture that Pugach shared this office with Hancock. (Apr. 15, 2010 Hr'g Tr. 12:3-6; 35:17-36:17). Furthermore, after the initial meeting, all parties testified that checks with payments for legal services in connection with Petitioner's case were made out to Hancock. (Apr. 15, 2010 Hr'g Tr. 107:15-108:10). Petitioner stated that he paid $40,000 or more before trial in checks made out to Hancock and was charged $50,000 for representation at trial. (Pet. Aff. at 3). Where checks were inadvertently made to Pugach, Petitioner claims he was asked to write "paralegal" in the notes section. (Id.). No doubt the lure of this lucre could have affected the truthfulness with which Pugach and Hancock approached their arrangement. However, Petitioner does not attach any cancelled checks made to Pugach or any other non-testimonial evidence to support his allegations.

12

Hancock submitted an affidavit attesting that "from the beginning of [Hancock's] representation of Mr. Elfgeeh, Petitioner was aware that Mr. Pugach had been disbarred." (Hancock Aff. ¶ 3). However, Petitioner maintains that throughout this period of meetings he was never made aware that Pugach was a felon or that he had been disbarred. (Apr. 15, 2010 Hr'g Tr. 122:2-7). In fact, Petitioner alleges that "Pugach and Hancock frequently referred to the fact that I had spent wisely because I had purchased 'two lawyers,' not one." (Pet. Aff. at 2). According to Petitioner, it was not until midway through the trial that he learned Pugach was disbarred through various news accounts. (Pet. Aff. at 3). Again, the exiguous evidence offered in support of Petitioner's claims makes many of these arguments a war of words between two disbarred attorneys and a convicted felon; an uphill battle for justice indeed.

On January 21, 2004, Hancock wrote Dawn Cardi to inform her that he'd been retained by Petitioner to represent him in his criminal case and to request a copy of Petitioner's records. (Pet. Hr'g Ex. 1). On May 18. 2004, Hancock entered a notice of appearance in Petitioner's criminal case. Pugach testified that once Hancock was on board Pugach acted as Hancock's paralegal, researching and drafting documents that Hancock would subsequently review and finalize. (Apr. 21, 2010 Hr'g Tr. 15:12-16). Hancock confirms that he represented Petitioner in his case, made all the final decisions relating to his trial strategy, and reviewed, edited, and approved all defense submissions. (Hancock Aff. ¶5).

13

Pugach testified that he drew up the motion to withdraw the guilty plea and advised Hancock and Petitioner that he felt he had this motion had a strong basis in law. (Apr. 21, 2010 Hr'g Tr. 17: 3- 19:1). Petitioner testified that he was never informed of any negative consequences of withdrawing his guilty plea. (Apr. 15, 2010 Hr'g Tr. 115:3-13; Elfgeeh Reply Aff. ¶ 2). Pugach likewise testified that he did not advise petitioner of any negative consequences of withdrawing his plea because he "didn't think there were negative consequences." (Apr. 21, 2010 Hr'g Tr. 23:17-21). In his affidavit, Hancock attests that he advised Petitioner of the risks of withdrawing his guilty plea, including the risk of being subjected to a higher sentence. (Hancock Aff. ¶ 2). None of the parties submitted any support for their argument regarding what advice was given or received beyond their own self-serving, testimony.

While the relationships between Pugach and Hancock appears fuzzy in the months leading up to the trial, it is clear that Hancock was the attorney acting on Petitioner's behalf at the trial itself. Hancock stood up at the trial and did the questioning and cross-examining of witnesses. Furthermore, during the trial the two attorneys had several disagreements regarding how to proceed. One of these disagreements included the decision not to ask this Court to poll the jury about publicity during the trial. Pugach. Apparently Pugach felt the jury should be polled and Hancock disagreed. It was Hancock's view that prevailed and the jury was ultimately not polled. (Apr. 21, 2010 Hr'g tr. 32:15-18; Hancock Aff. ¶ 5).

14

III.    Effectiveness of Petitioner's Counsel

Petitioner complains that Hancock: (1) did not alert the Court to the three-step procedure to address mid-trial publicity and objected to this Court's polling the jury on the issue of publicity; (2) elicited Petitioner's part in a terrorism investigation through his questioning of one of Petitioner's witnesses; (3) did not object to the fine imposed; which was more than double the guideline range; (4) did not prepare for trial at all, including failing to go over discovery material; and (5) had him testify without preparation.

a. Pre-Trial

Accepting as true that no one wants to go to jail and most will seek to avoid that punishment if possible, this Court heard testimony from Petitioner that he was satisfied with his guilty plea until he was referred to Pugach, who convinced him he had a chance to beat the case against him by withdrawing his guilty plea. Both Petitioner and his witnesses testified that Pugach counseled them that the government had no case and that this would never proceed to trial. (Apr. 15, 2010 Hr'g Tr. 7:21-8:17; 12:22-13:9; 104: 13-21; Pet. Aff. at 1 (reporting Pugach's assurances that he had "caselaw" that would establish that Petitioner had not committed a crime and would "knock [the indictment] out"). While we don't doubt that Petitioner was all too eager to withdraw this guilty plea, it does appear as if it

was Pugach who planted the glimmer of hope that this action would eliminate or at least significantly reduce the jail time he was facing.  Furthermore, it is clear that had Petitioner been aware that he faced a significantly higher sentence at trial, this may have affected his decision to withdraw his initial plea, losing his reduction for acceptance of responsibility under the Sentencing Guidelines. (Pet. Reply Aff. ¶ 2 ("Had I known that plea withdrawal would result in a term of imprisonment of 188 months I do not believe I would have pursued plea withdrawal")).

Our case law confirms that counsel has a professional obligation to adequately inform her client about the considerations that are relevant to her client's decision to accept or deny a plea bargain. In Gordon, the Second Circuit affirmed the district court's finding of ineffective assistance, ruling that counsel's performance fell below an objective standard of reasonableness because, when advising his client about whether to accept a proposed plea, counsel "grossly" underestimated defendant's potential sentencing exposure at trial.  United States v. Gordon, 156 F.3d 376, 379 (2d Cir. 1998) (per curiam) (stating that defendant's Sixth Amendment right attaches at the initiation of formal charges and extends to "all critical stages in the proceedings," including plea negotiations). The Court acknowledged that this was an error that related to a key consideration for defendant in making an informed decision, stating that "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." Id. (quoting United

16

States v. Day, 969 F.2d 39, 43) (3d Cir.1992) (internal alteration notation omitted). In Purdy v. United States, 208 F.3d 41 (2d Cir. 2000), the Second Circuit ruled that, even though counsel "never advised [his client] in so many words" about whether or not to plead guilty, id. at 47, he provided effective counsel because he advised his client on the factors necessary to allow defendant to make an informed decision, such as the strength of the government's case and other benefits of pleading guilty, id. at 47-48. Petitioner's allegations that Pugach failed to fulfill his professional duty to assist Petitioner in making an informed decision because he neglected to apprise Petitioner of the factors needed to make an informed decision in his case do support a claim for ineffective assistance of counsel. Pugach's opinion that there were no negative consequences to withdrawing the guilty was an unreasonable position, extending beyond the bounds of protected tactical decisions. However, Petitioner has not provided any evidence rebutting Hancock's claim that he informed Petitioner of the negative consequences of pleading guilty, negating the prejudicial effect necessary to sustain Petitioner's claim. Unable to establish prejudice, Petitioner cannot show that he received ineffective assistance of counsel pre-trial.

   b.   At Trial

      A petitioner challenging his attorney's trial strategy faces a weighty burden. See Strickland, 466 U.S. at 690-91 ("[S]trategic choices made after

thorough investigation ... are virtually unchallengeable."). "Generally, a petitioner can only prove his counsel was ineffective if his counsel's actions could not possibly be considered sound trial strategy." <u>Contreras v. United States</u>, No. 05 Civ. 9022, 2006 WL 2819644, at *3 (S.D.N.Y. Sept. 29, 2006). The Court does not see any manner in which Pugach's presence on the defense team rendered the representation of Petitioner deficient. <u>See</u>, <u>e.g.</u>, <u>Stevens</u>, Nos. 09 Civ. 4098(JFK), 03 Cr. 669(JFK), 2010 WL 3447900 , at *3 (S.D.N.Y. Sept. 1, 2010).

Pugach's mere presence at trial did not affect the representation Petitioner received. Hancock alone conducted the defense on Petitioner's behalf. Hancock was the attorney of record, examined all the witnesses, addressed the jury, and otherwise presented Petitioner's defense. Where Pugach disagreed with Hancock, it was Hancock's view that prevailed. There is nothing from which the Court can conclude that Pugach was conducting the trial from behind the scenes. Similarly, there is nothing to show that had Petitioner known that Pugach was a non-attorney or convicted felon, that he would have asked for new counsel or pursued a different defense.

The Court cannot conclude that Petitioner received deficient representation based on Hancock's trial decisions. Decisions regarding whether to address mid-trial publicity with the jury or the scope of witness examination are clearly tactical decisions. <u>See United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987) (holding that the "manner" and "extent" to which counsel conducts

18

cross-examination are strategic decisions that, when "reasonably made, will not constitute a basis for an ineffective assistance claim"); Garcia v. Kuhlmann, 897 F.Supp. 728, 730 (S.D.N.Y. 1995) ("The choice of how to conduct cross-examination is a matter of trial strategy, which will not be reviewed by the Court unless counsel failed even to put on a defense, or to perform other basic elements of trial advocacy"); Ruezga v. Yates, 330 Fed.Appx. 656, 657 (9th Cir. 2009) (counsel's decision to open the door to gang-related evidence was a strategic decision entitled to deference, not ineffective assistance of counsel); Wilson v. Henry, 185 F.3d 986, 991 (9th Cir. 1999) (holding that there was no ineffective assistance of counsel where counsel relied on jurors' statements that they would be fair and follow the law without asking about their views on criminal history). Regarding the polling of the jury, Hancock specifically stated his objection to polling the jury was based in his concern that doing so would raise the jury's curiosity. (Hancock ¶ 5).

Although the Second Circuit remanded Petitioner's case for reconsideration of the fine, "[a] monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for § 2255 purposes.'" United States v. Segler, 37 F.3d 1131, 1137 (5th Cir. 1994) (quoting United States v. Michaud, 901 F.2d 5, 7 (1st Cir. 1990)); but see, D'Andrea v. U.S., Civ. No. 3:08-cv-554, 2009 WL 248025 (D.Conn. 2009) (finding the attorney's performance fell below the objective standard of reasonableness for not objecting to an excessive fine and

petitioner was prejudiced by this failure). Even if the monetary fine was a sufficient basis for a §2255 petition, that portion of his sentence has already been reduced to reflect an amount within the Guidelines range and could not form a ground for relief here. See United States v. Elfgeeh, 515 F.3d 100 (2d Cir. 2008) (remanding for reconsideration of the fine).

Likewise, Petitioner has failed to show how additional preparation would have affected the outcome of his trial. He has not pointed to any discovery or expert testimony that would have had an affect on the outcome of the trial. He has also not specifically addressed how additional preparation for his own testimony would have affected the jury's verdict. Without establishing the prejudice prong of Strickland, a defendant cannot use allegations that his counsel failed to prepare to support his ineffective assistance of counsel claims. See Dexter v. Secretary, Dept. of Corrections, No. 8:09-cv-2478-T-33TBM, 2010 WL 1911609, *6-7 (M.D.Fla. May 12, 2010) (conclusory allegations that counsel failed to adequately prepare the witnesses would not support an ineffective assistance of counsel claim); U.S. v. Mealy, 851 F.2d 890 (7th Cir. 1988) (counsel's alleged failure to adequately prepare defendant to testify at suppression hearing did not constitute ineffective assistance of counsel where defendant failed to indicate how additional preparation would have enhanced his testimony); United States v. Smith, 1997 WL 700487 at *2 (E.D.Pa. Oct. 22, 1997).

P-049

## CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus is denied. The Clerk of the Court is directed that this Order closes this case. Because Petitioner has not made a substantial showing of the denial of any constitutional right, a certificate of appealability will not be issued. 28 U.S.C § 2253. See Lozada v. United States, 107 F. 3d 1011, 1017, (2d Cir. 1997), *abrogated on other grounds*, United States v. Perez, 129 F.3d 255, 259-260 (2d Cir. 1997). The Court also certifies, pursuant to 28 U.S.C § 1915(a), that any appeal from a judgment denying this petition would not be taken in good faith.


SO ORDERED.


Dated: September 15, 2010          S/SJ
       Brooklyn, New York

                                  Senior U.S.D.J.